NOT DESIGNATED FOR PUBLICATION

No. 117,033

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL A. CHIGHISOLA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed November 30, 2018. Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., MALONE, J., and STUTZMAN, S.J.


PER CURIAM: Michael A. Chighisola appeals following his convictions of two counts of rape and one count of aggravated criminal sodomy, arguing a violation of his constitutional right to a speedy trial and various trial errors. For the reasons stated below, we affirm Chighisola's convictions.

1

In early 2014, C.D. (Mother) and K.D. (Stepfather) started having difficulty with 13-year-old S.M. Because of their concerns, Stepfather searched one of S.M.'s cameras and discovered pictures showing that S.M. had been cutting herself. Mother and Stepfather also found S.M.'s journal, which contained writing suggesting that S.M. was depressed, angry, and suicidal. In the journal, S.M. referred to the family's previous house on Redbarn Lane in Wichita, Kansas, and said that she never wanted to tell anyone what had happened to her there. Concerned about S.M.'s well-being, Mother picked S.M. up from school and showed her the journal and the camera. When Mother asked S.M. if anyone had ever hurt her, S.M. named Chighisola. Mother and Stepfather had purchased drugs from Chighisola in the past, and he had lived with the family at some point during the summer of 2008. Thereafter, Mother and Stepfather stopped using drugs and no longer had any contact with Chighisola.

After S.M. claimed that Chighisola had harmed her, Mother drove S.M. directly to a hospital. While hospitalized, S.M. received mental health services at the Good Shepherd Psychiatric Clinic at Via Christi Behavioral Health. After S.M. was released from the hospital, she was interviewed by Wichita Police Detective Kim Warehime. S.M. told Warehime that Chighisola had sexually assaulted her several times in multiple locations. S.M. reported the first incident occurred when Chighisola placed his finger in her vagina while she was watching television in the basement of her house on Redbarn Lane. S.M. reported Chighisola assaulted her this same way in the basement more than once. S.M. reported Chighisola also assaulted her in the backseat of a Cadillac by touching her vagina, forcing her to perform oral sex, and ejaculating into her mouth. Finally, S.M. reported Chighisola assaulted her in a hotel room on two occasions by touching her vagina and forcing her to touch his penis. S.M. told Warehime that three of these incidents occurred between November 2007 and her grandfather's death on December 12, 2007. S.M. told Warehime that five to seven of these incidents occurred

between December 12, 2007, and the death of her grandmother on June 9, 2008. S.M. noted that the sexual assaults "skyrocketed" after her grandmother died.

The State charged Chighisola with three counts of rape and one count of aggravated criminal sodomy in case No. 14CR743. After a preliminary hearing, the State filed an amended information charging Chighisola with the same crimes but changed the dates of the alleged offenses. After the State discovered that the dates listed in the amended information were not accurate, the district court dismissed the case without prejudice. That same day, the State filed an information in case No. 15CR2462 charging Chighisola with the same crimes but changing the dates of the alleged offenses. Following a preliminary hearing, the State filed an amended complaint that included three additional offenses and changed the dates of the offenses to reflect the evidence produced at the hearing.

The case proceeded to trial, where Chighisola faced four counts of rape and three counts of aggravated criminal sodomy. At trial, S.M. testified that Chighisola had digitally penetrated her vagina several times when they were in her basement. S.M. also testified about an incident at a hotel where Chighisola touched her vagina, forced her to touch his penis, and penetrated her vagina and anus with his penis. Additionally, S.M. testified that before dropping her off at school one day, Chighisola drove her to a parking lot, where he touched her vagina, placed her hand on his penis, and forced her to perform oral sex.

Chighisola testified on his own behalf. He denied sexually assaulting S.M. and claimed that he was never alone with S.M. in the basement and that he never drove her to school.

The jury convicted Chighisola of two counts of rape and one count of aggravated criminal sodomy. The jury found Chighisola not guilty of the remaining four counts. The

3

district court sentenced Chighisola to a controlling term of 620 months to life in prison. Chighisola timely appeals.

ANALYSIS

Chighisola raises the following issues on appeal: (1) The State violated his constitutional right to a speedy trial, (2) the district court erred by admitting his prior convictions into evidence, (3) the district court erred by excluding evidence from S.M.'s mental health records, (4) the district court erred by denying his motion for an independent psychological evaluation of S.M., and (5) the cumulative effect of the alleged errors deprived him of a fair trial. We address each of these issues in turn.

1. *Constitutional right to a speedy trial*

Chighisola argues that the State violated his constitutional right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

The State contends that we should decline to address this issue because Chighisola did not raise a constitutional speedy trial claim before the district court. Indeed, Chighisola focused the entirety of his argument below upon his claim that the State had violated his *statutory* right to a speedy trial. Chighisola never specifically argued that his *constitutional* right to a speedy trial had been implicated.

Generally, constitutional grounds for reversal asserted the first time on appeal are not properly before the appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). There are, however, three exceptions to this rule, which allow an appellate court to consider a new legal theory: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of

4

the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Chighisola concedes that he did not raise a constitutional speedy trial argument below but claims that we may nevertheless address this issue for the first time on appeal based on the first two exceptions outlined above.

a. *Question of law on undisputed facts*

Chighisola asserts the issue of whether the State violated his constitutional right to a speedy trial is an issue of pure law on undisputed facts. We disagree. In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court set out a balancing test to determine whether a defendant's constitutional right to a speedy trial has been violated. See *State v. Otero*, 210 Kan. 530, 532-33, 502 P.2d 763 (1972) (adopting *Barker* test in Kansas). These factors are:  (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No single factor is controlling—we must consider them together along with other circumstances that may be relevant. 407 U.S. at 533. The first factor, the length of the delay, is a "triggering" factor—if the length of the delay isn't presumptively prejudicial, the court doesn't have to consider the other factors. 407 U.S. at 530. The Kansas Supreme Court has not set rigid rules for what constitutes a presumptively prejudicial delay; it depends on the facts of each case. See *State v. Weaver*, 276 Kan. 504, 509, 78 P.3d 397 (2003). For example, the acceptable delay for a simple, straightforward crime will be shorter than the acceptable delay for a complex crime. 276 Kan. at 511.

5

Notably, each of the four factors to be considered by the court in determining whether a defendant's constitutional right to a speedy trial has been violated is a factual question. In this case, Chighisola did not raise this constitutional speedy trial argument to the district court; so, to address the issue for the first time on appeal, we necessarily would be required to make factual findings. Of course, this means that the constitutional speedy trial issue presented by Chighisola is not an issue of pure law on undisputed facts and therefore does not fit within the exception that would allow an appellate court to consider this new legal theory for the first time on appeal.

b. *Fundamental right*

Alternatively, Chighisola asserts that declining to consider his constitutional speedy trial claim on appeal effectively will deprive him of his fundamental right to a speedy trial without due process. Based on the particular facts of this case as set forth below, however, we disagree.

On April 3, 2014, the State filed case 14CR743 charging Chighisola with three counts of rape and one count of aggravated criminal sodomy, all occurring in a date range from December 12, 2008, to August 31, 2009. At the preliminary hearing, the prosecutor asked the district court to bind Chighisola over on the original charges but to do so with an amended date range of May 1, 2009, to October 31, 2009. The court made a probable cause finding and ordered the State to file an amended information with the new date range. The State filed the amended complaint, and Chighisola entered a plea of not guilty. The court set the matter for a December 1, 2014 jury trial.

Twelve days before trial was to begin, Chighisola filed a notice of alibi, stating that he was incarcerated as a pretrial detainee on the dates of the offenses alleged in the amended complaint and, therefore, he could not have committed the offenses on the dates listed in the amended complaint. On the Saturday before trial, the State sent defense

6

counsel a proposed motion to amend the complaint to revise the date range to June 1, 2008, to October 31, 2008. In support of this motion, the State argued:

> "In the instant case, the named victim S.M. was 8 and 9 years old at the time the offenses were alleged to have taken place. S.M. is able to recall the places that crimes happened, but she testified at the preliminary hearing that the dates are hard for her to remember. In the initial complaint filed in this case, the first offense was alleged to have occurred in December 2008. The reports provided to the defense all contain the S.M.'s statement that the first occurrence was in 2008, near the time the victim's grandmother died, and while the defendant was living with the victim's family. At the time of the preliminary hearing in the case, S.M. believed that the first event happened in June of 2009, near the time her grandmother died. The complaint was amended at preliminary hearing to include June, 2009 through October 2009. After review of the death certificate, it has been determined that S.M.'s grandmother died June 8, 2008. Shortly after the death o[f] S.M.'s grandmother, the defendant moved into the home where the victim lived with her parents and sister. The State now seeks leave of the court to amend the complaint to cha[n]ge the date range originally reported and charged, beginning June 2008."

On the morning of trial, Chighisola filed a pleading with the district court entitled "Defendant's Objection to State's Motion to Amend Complaint." Meanwhile, the State filed case 15CR2462, which charged Chighisola with the same crimes charged in case 14CR743 but alleged the new date range. The court filed a journal entry at 10:33 a.m. in case 14CR743, dismissing the case without prejudice. Although the court's journal entry states its ruling was in response to the State's motion to dismiss the case without prejudice, there is no such motion in the record. Later that day, the court held a hearing in Chighisola's presence to verify that Chighisola understood that the old case had been dismissed and a new case had been filed.

A few months later, Chighisola filed a pro se motion to remove his counsel, Klaus Mueller. The district court granted the motion and appointed a new attorney to represent Chighisola. A few months after the new attorney came on board, Chighisola filed a

motion to dismiss, alleging his prior attorney improperly had requested trial continuances without Chighisola's knowledge or consent, therefore depriving Chighisola of his right under K.S.A. 2014 Supp. 22-3402 to be brought to trial promptly.

At a hearing held on the motion to dismiss, the district court judge began by confirming, without objection, that the motion to dismiss was limited to an alleged violation of Chighisola's statutory right to speedy trial and did not allege a constitutional violation:

> "THE COURT: This matter is set today for hearing on post-trial motion—pretrial motions, rather. I believe that we had a motion by the State to present evidence pursuant to K.S.A. 60-455. We also have a motion to dismiss filed by Mr. Chighisola alleging violation of constitutional and statutory—I'm sorry—violation of his statutory right to speedy trial guaranteed by K.S.A. 22-3402."

When it was ready to address the substance of Chighisola's K.S.A. 2014 Supp. 22-3402 speedy trial motion to dismiss, the district court again confirmed that "[w]e're dealing solely with violations of the speedy trial right, the speedy trial guarantee provided for by the Kansas State statutes." After considering the evidence and hearing arguments of counsel on the issue, the court denied Chighisola's motion:

> "[I]n K.S.A. 22-3402(g), the legislature mandated, if a defendant[,] or a defendant's attorney, [in] consultation with the defendant[,] requests [a] delay, and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request unless there is prosecutorial misconduct related to such delay. If the delay is initially attributed to the defendant, but is subsequently charged to the State for any reason, such delay shall not be considered against the State under subsections (a), (b) [o]r (c), and shall not be used for a ground for dismissing a case or for reversing a conviction, *unless not considering such delay would result in a violation of the constitutional right to a speedy trial* or if there is prosecutorial misconduct related to such a delay. Prosecutorial misconduct has not been alleged in the motions that we're here arguing today. *And*

8

*defense has not argued that there are constitutional violations to the right of speedy trial.* (Emphasis added).

      . . . .

"So, I think, there is unless there is a way around K.S.A. 22-3402(g), I'm required to deny the motion to dismiss based upon speedy trial grounds.

      "I think an appropriate and meaningful record has been made for the Appellate Courts to review this decision. So, unless counsel feels the need to make a further record."

At the hearing, the district court specifically informed Chighisola that the speedy trial statute in Kansas provides that any delay initially attributed to the defendant but later charged to the State cannot be used as grounds for dismissing a case under the statute unless there is prosecutorial misconduct or unless not doing so would result in a violation of the defendant's constitutional right to a speedy trial. Notwithstanding the information provided by the court, Chighisola stood silent and did not use this opportunity to raise a constitutional speedy trial argument. Notably, the court went further on the issue, stating: "And defense has not argued that there are constitutional violations to the right of speedy trial." Chighisola again remained silent, which we interpret as Chighisola's acknowledgement that the district court was correct; he was not making a constitutional speedy trial argument.

Now, on appeal, Chighisola argues that declining to consider his constitutional speedy trial allegation for the first time would deprive him of a fundamental right. But the transcript from the hearing held to consider the alleged violation of his *statutory* speedy trial reflects the district court verified with Chighisola in open court that he was *not* raising a *constitutional* speedy trial claim. These facts necessarily lead us to conclude that Chighisola did not intend to preserve his right to have the court consider any potential constitutional speedy trial issue but instead intended to waive it. For this reason, we are not persuaded that Chighisola would be deprived of a fundamental right if we decline to consider the constitutional speedy trial issue for the first time on appeal.

9

2. *Prior convictions*

Chighisola argues the district court erred by allowing the State to present evidence of his prior convictions in order to impeach his testimony at trial.

We begin our analysis by reviewing additional facts relevant to Chighisola's claim of error. During Chighisola's direct examination, he admitted that he sold drugs to Mother and Stepfather. Chighisola testified that when he went to their house to deliver drugs, he periodically would see S.M. and her sister but that Mother and Stepfather sometimes would ask him to deliver the drugs when the girls were not home. Chighisola testified he often would ask Mother and Stepfather if the girls were home because he did not "want to do a drug deal in front of kids." Thereafter, defense counsel questioned Chighisola:

"Q. Why not?
"A. Conscience, morals.
"Q. You're a drug dealer and you have morals?
"A. Yes, ma'am."

Later on in Chighisola's direct examination, he testified that his relationship with Mother and Stepfather ended because he knew that "[s]omething bad was going to happen." When defense counsel asked why he cared, Chighisola stated,

"I grew a conscience. I grew a conscience in the fact that I had never been around a family on a daily basis while I'm selling drugs. The usual drug transaction for me is they call me, I went over, I would drop the drugs off and leave. With [Mother and Stepfather], I was there around them all the time and I saw the breakdown of the family. And I started thinking, you know, that I played a part in this, that my drug transactions were playing a part in what's going on."

10

Chighisola went on to say that he was happy when Stepfather told him that he could not come over anymore. Chighisola claimed he was having second thoughts about what he was doing and did not want anyone to get hurt.

Before cross-examination, the district court held an off-the-record discussion with counsel at the bench. Based on the district court's later commentary, the court apparently ruled during the bench conference that Chighisola's testimony about his morality had opened the door to evidence of his prior convictions involving dishonesty. Based on this ruling, the prosecutor asked Chighisola during cross-examination whether Chighisola was asked to leave his professional hockey team because he was caught stealing from his teammates. Without objection, Chighisola responded affirmatively. Thereafter, the following exchange occurred:

"Q   [by the prosecutor]. You told this jury that it's because of your high moral standards that you would not sell drugs in front of those little girls, right?
"A.  Yes, ma'am.
"Q.  But in spite of those high moral standards you, in fact, have been convicted of several crimes involving—
    "[Defense counsel]:  Objection, relevance, and outside the scope.
    "THE COURT:  The Court will overrule the objections based on conversations at
the bench. We will make a fuller record next recess."

In response to the prosecutor's later questions, Chighisola admitted he previously had been convicted of several crimes involving dishonesty, including theft, forgery, and criminal use of a financial card.

During the next recess, the district court spoke with counsel outside the presence of the jury. The judge summarized the earlier bench conference, stating,

11

> "The State indicated that—that the prosecutor is of the opinion that the door had been opened to crimes of dishonesty or veracity based on the testimony of Mr. Chighisola referencing morals in terms of using or selling drugs around the children. The case law, I think, is clear that the door has been opened. [Defense counsel] indicated that she was going to object, but I think it was—was of the opinion that the case law cited by the State was correct."

The prosecutor then cited *State v. Blackburn*, 251 Kan. 787, 840 P.2d 497 (1992), as authority for introducing Chighisola's prior convictions into evidence to impeach Chighisola's prior testimony about his good moral character. Defense counsel stated that no additional record needed to be made on the issue.

On appeal, Chighisola argues the district court erred in finding that his testimony on direct examination had opened the door to allow the State to introduce evidence of his prior convictions involving crimes of dishonesty. Chighisola contends that the State's use of these convictions was improper for impeaching his testimony under K.S.A. 60-447 because they were not relevant in proving a character trait in issue. Chighisola also contends use of his prior convictions was improper under K.S.A. 60-421 because he did not make the statements about his morality for the sole purpose of bolstering his credibility.

The State asserts Chighisola is precluded from raising these specific arguments on appeal because he failed to raise them below and, in fact, invited the error about which he now complains. In the alternative, the State asserts that the evidence was admissible under K.S.A. 60-421 and K.S.A. 60-447 because Chighisola opened the door to the admission of his prior convictions by placing his character in issue.

12

a. *Preservation*

Whether an issue has been properly preserved for appeal is a question of law subject to unlimited review. *State v. Jones*, 298 Kan. 324, 330, 311 P.3d 1125 (2013).

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016). As such, a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). Here, it is unclear whether defense counsel initially objected to the admission of Chighisola's prior convictions during the off-the-record bench conference. The district court judge later recalled that defense counsel "indicated that she was going to object, but I think it was—was of the opinion that the case law cited by the State was correct." The only objection lodged by defense counsel that appears clearly in the record is an objection based on relevance and outside the scope of direct examination.

In his reply brief, Chighisola argues that the record made during the bench conference reflects that the purpose and requirements of the contemporaneous objection rule in K.S.A. 60-404 were fulfilled because the parties understood the issue to involve K.S.A. 60-447 and the district court had the opportunity to rule accordingly. But there is a clear distinction between arguing that the admission of the evidence at issue was precluded under specific statutory rules and the grounds argued by defense counsel on the record. Because it is not clear that Chighisola challenged the admission of his prior convictions as improper character evidence, we are hesitant to consider this argument on appeal. See *Scogin v. Nugen*, 204 Kan. 568, 577, 464 P.2d 166 (1970) (holding issue was not preserved where "[t]he specific ground of the objection in the present case is not clear on the record before us"); see also *State v. Moore*, 302 Kan. 685, Syl. ¶ 4, 357 P.3d 275 (2015) ("K.S.A. 60-404 provides that a verdict will not be set aside by reason of the

13

erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific grounds of the objection."). Given the ambiguity presented here, however, we believe it proper to reach the merits of Chighisola's argument.

      b. *Admissibility of Chighisola's prior convictions*

      Generally, issues regarding the admission of evidence require a multistep analysis with separate standards of appellate review applying to each analytical step. *State v. Everett*, 296 Kan. 1039, 1044, 297 P.3d 292 (2013). For evidence to be relevant, it must be both probative and material. See K.S.A. 60-401(b). We review the district court's assessment of the probative value of evidence under an abuse of discretion standard, and our review for materiality is de novo. *State v. Ultreras*, 296 Kan. 828, 857, 295 P.3d 1020 (2013). Moreover, even if evidence is relevant, the district court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. An appellate court reviews any such determination for abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). Once relevance is established, the district court's consideration of the admissibility of evidence can also require application of statutory rules controlling the admission and exclusion of certain types of evidence. These statutory rules are applied as a matter of law or as an exercise of the district court's discretion, depending on the applicable rule. See *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014).

      Here, the parties frame the issue as the district court admitting Chighisola's prior convictions under K.S.A. 60-421 (evidence of defendant's prior convictions inadmissible for sole purpose of impairing his or her credibility unless defendant has first introduced evidence solely for purpose of supporting his or her credibility) or K.S.A. 60-447 (character evidence as tending to prove conduct on specified occasion admissible only after defendant first introduces evidence of his or her good character). Whether the

14

district court complied with specific statutory requirements for admitting evidence for the purpose of impeaching a witness' credibility requires interpretation of a statute, which we review de novo. *State v. Stafford*, 296 Kan. 25, 47, 290 P.3d 562 (2012). Finally, the erroneous admission of evidence is subject to review for harmless error under K.S.A. 2017 Supp. 60-261. See *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013).

Without discussing the analytical steps set forth above, the State simply argues that the "open the door" rule set forth in *Blackburn* made the evidence of Chighisola's previous convictions admissible to impeach him under K.S.A. 60-447. But the State fails to acknowledge that our Supreme Court has held that, after its decision in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), there were no exceptions to the admission of prior crimes evidence apart from K.S.A. 60-455. *Everett*, 296 Kan. at 1045.

In *Everett*, the State unsuccessfully sought to admit evidence of a defendant's prior crime by using the "'open the door'" rule. Our Supreme Court explained: "In essence, through this [open the door] rule, the State seeks to admit evidence of a prior crime in a manner that is independent of the rules of evidence, including K.S.A. 60-455, which relates to the admission of evidence regarding other crimes or civil wrongs." 296 Kan. at 1044. The *Everett* court noted that the "State's arguments ignore our decision in *Gunby* in which [the court] ended a prior practice of admitting evidence of other crimes or civil wrongs *on any grounds independent of K.S.A. 60-455*." (Emphasis added.) 296 Kan. at 1044. The *Everett* court acknowledged that before *Gunby* it had allowed the admission of previous crime evidence independent of K.S.A. 60-455 based on the "open the door" rule exception. *Everett*, 296 Kan. at 1044-45. But the court noted it had refined that analysis in *Gunby* by announcing that the "'admissibility of any and all other crimes and civil wrongs evidence will be governed by K.S.A. 60-455.'" *Everett*, 296 Kan. at 1045. Consistent with *Gunby*, the *Everett* court held that "evidence admitted in rebuttal to other evidence under an 'open the door' rule is not an exception permitting evidence of other

15

crimes or civil wrongs to be admitted independent of K.S.A. 60-455." *Everett*, 296 Kan. at 1045.

Because the State was seeking to introduce prior crimes evidence under K.S.A. 60-447, the district court should have applied the safeguards inherent in a K.S.A. 2017 Supp. 60-455 analysis before admitting evidence of Chighisola's prior convictions. See *Everett*, 296 Kan. at 1045. In *Gunby*, our Supreme Court set out a three-part test a district court must use in determining whether to admit evidence of a defendant's prior crimes or civil wrongs under K.S.A. 2017 Supp. 60-455. In examining evidence of prior convictions, the district court must determine (1) whether the fact to be proven is material; (2) whether the material fact is in issue and, if so, whether the evidence is relevant to prove the disputed material fact; and (3) whether the probative value of the evidence outweighs its prejudicial effect on the defendant. Additionally, to avoid error in a jury trial, the district court must give a limiting instruction telling the jury of the specific purpose for the admission of the prior conviction. *Everett*, 296 Kan. at 1046. Here, the district court failed to conduct a *Gunby* analysis or issue a limiting instruction.

On appeal, Chighisola only incidentally mentions K.S.A. 2017 Supp. 60-455 and *Gunby*. Chighisola's failure to brief the applicability of the procedural safeguards regarding K.S.A. 2017 Supp. 60-455 on appeal precludes consideration of such an evidentiary analysis. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (point raised incidentally in brief and not argued therein is deemed abandoned). This is also true for a review of whether the district court should have given a limiting instruction regarding K.S.A. 2017 Supp. 60-455 evidence to the jury. Although a defendant's failure to contemporaneously object to the admission of K.S.A. 2017 Supp. 60-455 evidence does not waive his or her right to raise on appeal the issue of whether the failure to give a limiting instruction was clearly erroneous, Chighisola makes no such argument on appeal. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013); *State v. Breeden*, 297 Kan. 567, 582, 304 P.3d 660 (2013).

16

But even if Chighisola had preserved this issue for appeal and the district court did err by allowing the State to impeach Chighisola with his prior convictions, the error was harmless. An error is harmless when it does not affect a party's substantial rights or, in other words, does not change the outcome of the trial. *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011). Where, as here, an error implicates a statutory but not a federal constitutional right, the State must show that "there is no reasonable probability that such error affected the outcome of the trial in light of the entire record." *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

Based on our review of the record, we find that, even without evidence of Chighisola's prior convictions, the jury would have been aware that his claims of being moral and having a conscience were questionable in light of other evidence presented at trial. The jury heard Chighisola admit, without objection, that his hockey career had ended when he was caught stealing from his teammates. Moreover, Chighisola readily acknowledged throughout trial that he had sold large quantities of drugs to Mother and Stepfather. And notably, the jury found Chighisola guilty of only three of the seven charges filed against him. This indicates that the jury properly weighed the evidence presented and considered the credibility of the witnesses without being adversely influenced by Chighisola's prior convictions. Finally, Chighisola's previous convictions for theft, forgery, and criminal use of a financial card were not similar to any of the seven rape and aggravated criminal sodomy charges filed against him. For all these reasons, there is no reasonable probability that the alleged error affected the trial's outcome. As a result, any error by the district court in admitting evidence of Chighisola's prior convictions was harmless.

*3. Mental health records*

Chighisola argues the district court erred by relying on the treatment facility privilege of K.S.A. 65-5602 to prohibit Chighisola from introducing evidence in S.M.'s

17

mental health records. The following additional facts are relevant to Chighisola's claim of error.

Before trial, Chighisola filed a motion seeking a psychiatric or psychological examination of S.M. Although the district court denied the motion, it noted in doing so that it was not ruling on whether the defense was entitled to S.M.'s current mental health records. After additional discussion, however, the court ordered the State to provide the defense with S.M.'s mental health records.

At trial, the State introduced evidence that S.M. had received treatment at Good Shepherd on two occasions. The first time was in February 2014 after S.M. disclosed to Mother that she had been sexually abused; S.M. returned to Good Shepherd a second time in March 2014 following a suicide attempt. S.M. testified that while at Good Shepherd, she was diagnosed with posttraumatic stress disorder (PTSD) and major depression. S.M. stated that as a result of her diagnoses, she had been prescribed Seroquel and Zoloft.

Before the defense presented its case-in-chief, defense counsel informed the district court that Chighisola had subpoenaed two witnesses who had worked with S.M. at Good Shepherd. Counsel explained that the witnesses had made clinical notes in their records regarding statements S.M. made during group therapy sessions. Counsel argued that the defense should be allowed to introduce this evidence to support its theory that S.M. "say[s] things and do[es] things to gain attention." Counsel claimed this evidence would support testimony from the doctor who treated S.M. at Good Shepherd that S.M. engaged in "attention-seeking behavior." The prosecutor objected to allowing the two witnesses to testify, claiming that any testimony would relate to specific instances of conduct and was therefore prohibited under K.S.A. 60-447. The district court, for its part, questioned whether the information would be covered by the physician-patient privilege set forth in K.S.A. 2017 Supp. 60-427. Following a recess, the district court adopted the

18

State's position that the witnesses' testimony was inadmissible under K.S.A. 65-5602, which extends a patient's privilege in a treatment facility to group therapy. The court noted defense counsel's objection for the record and offered counsel the opportunity to proffer the witnesses' testimony.

Later, outside the presence of the jury, defense counsel proffered the testimony and clinical notes of two witnesses, Catrina Bickford and Jane Kaufman. Bickford, a registered nurse at Via Christi Behavioral Health, testified about her notes from S.M.'s February 8, 2014 group therapy session. According to Bickford's notes, S.M. told the group that she had a brother who had committed suicide and two brothers who had died from gang violence. According to Mother, however, S.M. had no biological brothers, S.M. might have been referring to her sister's boyfriend who had committed suicide, and S.M. may have referred to her peers as brothers. Kaufman, a dual diagnosis therapist at Via Christi Behavioral Health, testified about a March 10, 2014 progress note from a group therapy session. The note provided, in part, that S.M. claimed she lost two brothers to gang-related violence.

a. *Admissibility under K.S.A. 65-5602*

As previously discussed, issues involving the admission or exclusion of evidence require a multistep analysis to determine whether the evidence is relevant and whether the probative value of the evidence is outweighed by its potential for producing undue prejudice. See K.S.A. 60-401(b); K.S.A. 60-445.

Typically, the next step of analysis regarding the admissibility of evidence is to apply the statutory rules controlling the admission and exclusion of evidence. *Bowen*, 299 Kan. at 348. When the question of whether the district court complied with specific statutory requirements for admitting evidence requires interpretation of a statute, appellate review is de novo. *Stafford*, 296 Kan. at 47.

19

The district court found that the evidence at issue was inadmissible under K.S.A. 65-5602(a), which provides:

> "A patient of a treatment facility has a privilege to prevent treatment personnel or ancillary personnel from disclosing that the patient has been or is currently receiving treatment or from disclosing any confidential communications made for the purposes of diagnosis or treatment of the patient's mental, alcoholic, drug dependency or emotional condition. The privilege extends to individual, family or group therapy under the direction of the treatment personnel and includes members of the patient's family. The privilege may be claimed by the patient, by the patient's guardian or conservator or by the personal representative of a deceased patient. The treatment personnel shall claim the privilege on behalf of the patient unless the patient has made a written waiver of the privilege and provided the treatment personnel with a copy of such waiver or unless one of the exceptions provided by K.S.A. 65-5603 is applicable."

In support of his claim that the district court erred by finding the evidence was inadmissible under K.S.A. 65-5602, Chighisola argues:  (1) neither S.M. nor her family claimed the privilege, (2) there was no proof that Good Shepherd was a "treatment facility" as defined by statute, (3) S.M. waived any privilege by testifying about her counseling and treatment at Good Shepherd, and (4) the rules of evidence do not provide for the exclusion of evidence when the holder of the privilege is not a party to the action.

As a preliminary matter, although defense counsel generally objected to the exclusion of the evidence at issue, counsel did not raise these specific arguments relating to K.S.A. 65-5602 either at trial or in Chighisola's posttrial motions. Generally, issues that are not raised below cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Chighisola does not explain why he should be permitted to make these arguments for the first time on appeal, as required by Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34). As a result, it appears Chighisola may have abandoned this issue. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

20

Even if Chighisola had not abandoned the issue, however, his claim of error fails. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

(1) *Claim of privilege*

K.S.A. 65-5602(a) provides that the treatment facility privilege may be claimed by the patient or the patient's guardian or conservator. Chighisola asserts that neither S.M. nor anyone else ever claimed the privilege.

Under well-established Kansas caselaw, the word "may" is permissive, not mandatory. See, e.g., *Hill v. Kansas Dept. of Labor*, 292 Kan. 17, 21, 248 P.3d 1287 (2011) (contrasting "permissive word 'may'" with "directory language such as 'shall' or 'must'"); *State v. Engelhardt*, 280 Kan. 113, 121, 119 P.3d 1148 (2005) (statute's use of "may" "plainly permissive"). Although a patient or a patient's guardian or conservator *may* claim the privilege under K.S.A. 65-5602(a), they are not required to do so. On the other hand, the statute provides that treatment personnel *shall* claim the privilege on behalf of the patient unless the patient has made a written waiver or unless one of the exceptions in K.S.A. 2017 Supp. 65-5603 applies. When the Legislature specifically uses the permissive "may" within the same statute as "shall," the mandatory nature of "shall" "cannot be overlooked." *Szoboszlay v. Glessner*, 233 Kan. 475, 482, 664 P.2d 1327 (1983). There is nothing in the record to suggest that S.M. waived the privilege or that any of the exceptions in K.S.A. 2017 Supp. 65-5603 apply, so K.S.A. 65-5602(a)

21

required the treatment personnel to claim the privilege on her behalf. To that end, during defense counsel's proffer, Bickford and Kaufman both mentioned S.M.'s federal statutory privacy rights and only read the notes containing S.M.'s statements after the district court ordered them to do so. Chighisola's argument that no one claimed the privilege under K.S.A. 65-5602 necessarily fails.

(2) *Treatment facility*

Chighisola argues the district court's reliance on K.S.A. 65-5602(a) was erroneous because no one ever established that the Good Shepherd Psychiatric Clinic at Via Christi Behavioral Health was a "treatment facility" under the statute.

K.S.A. 2017 Supp. 65-5601(d) defines "'[t]reatment facility'" as "a community mental health center, community service provider, psychiatric hospital and state institution for people with intellectual disability." These types of facilities are further defined as specific state-run hospitals and facilities licensed under K.S.A. 75-3307b. See K.S.A. 2017 Supp. 65-5601(f)-(i). Chighisola correctly notes that the 2016 Legislature repealed K.S.A. 75-3307b. See L. 2016, ch. 105, § 20. As a result, Chighisola claims that at the time of his trial, there were no longer any facilities licensed under K.S.A. 75-3307b. While it is true that the Legislature repealed K.S.A. 75-3307b before Chighisola's trial, it is unclear why the Legislature still references this statute in K.S.A. 2017 Supp. 65-5601. In any event, we cannot infer from the repeal of K.S.A. 75-3307b that the Good Shepherd Psychiatric Clinic at Via Christi Behavioral Health is not licensed and is therefore not a "treatment facility" under K.S.A. 2017 Supp. 65-5601(d).

(3) *Waiver of privilege*

Chighisola claims that even if the evidence at issue were privileged, S.M. waived any privilege by testifying about her counseling and treatment at Good Shepherd throughout trial. For support, Chighisola relies on K.S.A. 60-437, which states:

"A person who would otherwise have a privilege to refuse to disclose or to prevent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that such person or any other person while the holder of the privilege has . . . (b) without coercion, or without trickery, deception, or fraud practiced against him or her, and with knowledge of the privilege, made disclosure of any part of the matter or consented to such a disclosure made by anyone."

Chighisola's reliance on K.S.A. 60-437 is misplaced. Although S.M. testified generally about her time at Good Shepherd, she never disclosed or otherwise consented to the disclosure of the specific evidence that the defense sought to introduce. Thus, S.M. did not waive the treatment facility privilege set forth in K.S.A. 65-5602.

(4) *Evidence of wrongful disclosure inadmissible against holder of privilege*

Finally, Chighisola alleges that the district court's reliance on the treatment facility privilege was improper under K.S.A. 60-438, which provides: "Evidence of a statement or other disclosure is inadmissible against the holder of the privilege if the judge finds that he or she had and claimed a privilege to refuse to make the disclosure but was nevertheless required to make it."

Chighisola suggests that because S.M. is not a party to the action, the evidence at issue need not be excluded. But Chighisola misreads K.S.A. 60-438, which only applies when the holder of a privilege is wrongfully compelled to disclose evidence. See 4 Gard, Cassad & Mulligan, Kansas Law and Practice:  Kansas Code of Civ. Proc. Annot. § 60-

23

438 (5th ed. 2012) ("[I]f a disclosure is wrongfully compelled by the court after the privilege is claimed the disclosure is in the same class as those coerced or wrongfully induced extrajudicially, and that the disclosure in court under such circumstances should not be considered a waiver as to future litigation or in future hearings."). Here, S.M. was not wrongfully compelled to disclose the evidence.

S.M. made statements to treatment personnel during group therapy at a treatment facility. Because the statements at issue were the type contemplated by K.S.A. 65-5602(a), the district court properly excluded the evidence under this statute.

4. *Independent Psychological evaluation*

Chighisola argues that the district court committed reversible error by not granting his request for S.M. to submit to an independent psychological evaluation.

The decision to order a psychological evaluation of a complaining witness in a sex crime case rests soundly in the district court's discretion. *State v. Price*, 275 Kan. 78, 80, 61 P.3d 676 (2003); *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). Thus, we review a district court's decision whether to grant a psychiatric evaluation of the victim for an abuse of discretion. *State v. McCune*, 299 Kan. 1216, 1230, 330 P.3d 1107 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting error has the burden to show the district court abused its discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

A district court can order a psychological evaluation of a sex abuse victim when the defendant can show that the totality of the circumstances demonstrate a compelling reason for the evaluation. *State v. Berriozabal*, 291 Kan. 568, 580-81, 243 P.3d 352

24

(2010); *Gregg*, 226 Kan. at 489. A determination of whether such compelling circumstances exist requires examination of the totality of the circumstances, with the following nonexclusive list of factors—referred to as the *Gregg* factors—to be considered:  (1) whether there was corroborating evidence of the victim's version of the facts, (2) whether the victim demonstrates mental instability, (3) whether the victim demonstrates a lack of veracity, (4) whether similar charges by the victim against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the victim appears to be a fishing expedition, and (6) whether the victim provides an unusual response when questioned about his or her understanding of what it means to tell the truth. See *Berriozabal*, 291 Kan. at 561 (citing *Gregg*, 226 Kan. at 490); but see *State v. Simpson*, 299 Kan. 990, 998-99, 327 P.3d 460 (2014) (Moritz, J., dissenting) (noting Kansas Supreme Court has refused to extend *Gregg* to non-sex-crime contexts and recommending that Kansas overrule *Gregg*).

In support of his motion to compel a psychological examination of S.M., Chighisola noted that S.M. had been seen by a therapist; S.M. claimed that the events occurred in 2008; and there was no corroborating evidence to support S.M.'s claims, i.e., a lack of physical evidence and no third-party witnesses. Chighisola claimed that "questions about [S.M.'s] veracity and mental stability give rise to further questions about material inconsistencies in her version of events."

The district court held a nonevidentiary hearing on Chighisola's motion, where defense counsel alleged that compelling circumstances warranted a psychological examination of S.M., given her extensive mental health history. Defense counsel pointed out that the State's discovery materials revealed that S.M. had a history of self-mutilation, that S.M. told others that she had "borderline schizophrenia," that S.M. suffered from depression and was on medication, that S.M. claimed to hear voices, and that S.M. had been in a mental health facility on two occasions for attempted suicide and had undergone psychological counseling.

25

After hearing argument from the parties, the district court found that Chighisola had not demonstrated compelling reasons for a psychological evaluation. Applying the *Gregg* factors, the court found that (1) there may be a lack of corroborating evidence, (2) S.M.'s mental instability "may be present," (3) S.M.'s lack of veracity "may or may not be present," (4) there had been no other similar charges proven to be false, (5) the motion "appear[ed] to be somewhat of a fishing expedition to get inside [S.M.'s] head and figure out if there is some way to challenge her veracity," and (6) S.M. had no unusual responses when asked about her understanding of what it means to tell the truth. The court then found that S.M.'s existing mental health records would allow Chighisola to formulate a defense at trial and ordered the production of those records.

Chighisola argues the district court abused its discretion in denying his motion to compel because the totality of the circumstances present here demonstrated compelling reasons for an independent psychological evaluation of S.M. Chighisola asserts that his request for the evaluation was not a fishing expedition, given S.M.'s documented history of mental illness that was contemporaneous with her disclosures about Chighisola, the lack of corroborating evidence to support S.M.'s allegations, and the changing timeframes of when the alleged abuse occurred. For support, Chighisola relies primarily on *State v. Bourassa*, 28 Kan. App. 2d 161, 15 P.3d 835 (1999).

In *Bourassa*, the defendant presented evidence that the 11-year-old victim had been under psychological care for behavior disorders, had accused her father of sexually molesting her, had tended to soil herself, and had reportedly mutilated two kittens. And the victim's sister, who purportedly was present when the abuse occurred, did not testify that anything improper occurred. A panel of this court held that the district court abused its discretion in refusing to compel the psychological evaluation of the complaining witness. 28 Kan. App. 2d at 163, 166-67.

The reasons cited by Chighisola are not comparable to those presented in *Bourassa*. S.M. was eight years old when the alleged abuse occurred, so it is not surprising that she had difficulty remembering the precise dates more than five years later, especially when the alleged abuse occurred on multiple occasions over a period of several weeks. Additionally, much of the uncertainty about the dates of the alleged abuse resulted from confusion over when S.M.'s grandparents died. As S.M. explained at trial, the more she thought about the timeframe, she realized that the incidents began after her grandmother died and after Chighisola had moved in with her family. S.M. further explained that while she generally remembered the sequence of the incidents, she could not recall specific dates. The changing timeframes of when the alleged abuse occurred do not establish a lack of veracity by S.M. or otherwise support Chighisola's request for a psychological evaluation.

Similarly, the lack of evidence corroborating S.M.'s allegations is hardly unusual given that several years passed before S.M. reported the abuse, as well as the fact that S.M. alleged that the crimes occurred when she and Chighisola were alone. At trial, S.M. discussed numerous reasons for failing to timely disclose the abuse. S.M. stated that immediately following the abuse, she was afraid to report it for fear that she would be removed from Mother's home. S.M. also stated that she felt ashamed and guilty based on comments Chighisola made while the abuse was occurring and that she was scared of Chighisola. Finally, S.M. testified that she did not want to disappoint Mother, noting that Mother had "prided herself" on the fact that her daughters had never been abused. The lack of corroborating evidence does not weigh in Chighisola's favor.

Finally, there was no evidence demonstrating a psychological condition which would cast doubt on the veracity of S.M.'s allegations. S.M. testified that she had been diagnosed with PTSD and depression, that she suffered from hallucinations or "flashbacks," she had a history of cutting herself, and that she was on medication. Dr. Clarence Don Morgan, a licensed psychologist, testified that he had conducted a

psychological examination of S.M. at Via Christi in March 2014. Morgan testified that S.M. had been admitted for suicidal ideation and that she showed signs of PTSD. According to Morgan's notes, "[S.M.] is impulsive and enjoys being the center of attention." Morgan also noted that "[S.M.'s] demeanor changed while discussing this, which seemed intended to gain attention." Morgan testified that attention seeking, dramatic behaviors often result from abuse and trauma and do not mean that the patient is not being truthful.

Chighisola suggests that the district court's order for the production of S.M.'s existing mental health records reflects the court's belief that S.M.'s mental health was relevant to the defense. Chighisola complains that he was prejudiced by the court's later ruling that evidence from S.M.'s mental health records was privileged. Chighisola claims that the court could have avoided this problem by simply granting his request for a psychological evaluation.

The purpose of a psychological evaluation of a complaining witness in a sex crime case is to test the complaining witness' veracity. See *Gregg*, 226 Kan. at 487. Notably, nearly every piece of information that Chighisola relies on to argue for a psychological evaluation actually came out at trial, thereby allowing the jury to do its job and assess S.M.'s veracity. As for the remaining *Gregg* factors, Chighisola does not allege, and there is nothing in the record to indicate, that S.M. made similar charges against others that have proven to be false or that she provided an unusual response when questioned about her understanding of what it means to tell the truth.

A district court rarely abuses its discretion by refusing to order a psychological evaluation. *Rojas-Marceleno*, 295 Kan. at 531; see also *State v. Eddy*, 299 Kan. 29, 34, 321 P.3d 12 (2014) ("Appellate courts are typically loathe to find an abuse of discretion when a district court refuses to order a psychological examination of a young sex abuse victim, unless the circumstances are extraordinary."). Under the totality of the

28

circumstances here, Chighisola has failed to show that the district court's exercise of discretion in denying the request for an independent psychological evaluation was contrary to the factors set forth in *Gregg* or was so arbitrary that no reasonable person would take the view of the district court. As a result, we cannot say that the district court abused its discretion by denying Chighisola's request for an independent psychological evaluation of S.M.

5. *Cumulative error*

Finally, Chighisola argues that the cumulative effect of the errors alleged above deprived him of his constitutional right to a fair trial. When a party argues that the cumulative impact of alleged errors is so great that they result in an unfair trial, this court aggregates all errors and, even if those errors individually would be considered harmless, analyzes whether their cumulative effect is so great that they collectively cannot be determined to be harmless. *State v. King*, 297 Kan. 955, 986, 305 P.3d 641 (2013). In undertaking such an analysis, this court reviews the entire record and exercises unlimited review. *State v. Sean*, 306 Kan. 963, 993, 399 P.3d 168 (2017).

Assuming that Chighisola preserved the issue for appeal, the district court erred by admitting evidence of Chighisola's prior convictions without conducting the evaluation required by K.S.A. 2017 Supp. 60-455. A single error, however, cannot constitute cumulative error. See *State v. Solis*, 305 Kan. 55, 71, 378 P.3d 532 (2016). Accordingly, Chighisola's claim of cumulative error fails.

Affirmed.