No. 100,529

STATE OF KANSAS, *Appellee*, v. FRANCIS EVERETT, *Appellant*.

(297 P.3d 292)

Opinion filed March 29, 2013.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Aaron C. Freestone*, legal intern, was with him on the briefs for appellant.

*Allen Shelton*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises the issue of whether a defendant's presentation of evidence that he was on probation at the time the current crime was committed opens the door to rebuttal evidence regarding a prior crime that may be admitted independent of K.S.A. 60-455. In *State v. Gunby*, 282 Kan. 39, 144 P.3d 647

(2006), this court held that evidence of a prior crime or civil wrong could not be admitted independent of K.S.A. 60-455, could not be admitted to prove a defendant's propensity to commit the crime charged, and could only be admitted if the evidence is relevant to prove a material fact. In this case, evidence of the prior crime was not material to any issues to be decided by the jury, even after the defendant presented evidence regarding his probation. Evidence of the prior crime was merely relevant to prove propensity, which is not a permissible basis for admission. Under the facts of this case, the evidence of the prior crime was sufficiently prejudicial to require reversal of the defendant's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Francis Everett was charged with one count of manufacturing a controlled substance in violation of K.S.A. 65-4159(a), after Tearesa Holmes, who had been granted transactional immunity, told law enforcement officers that she had manufactured methamphetamine with Everett in March or April 2006.

At Everett's trial, Holmes testified the two of them manufactured methamphetamine sometime in March, April, or possibly May 2006. According to Holmes, Everett approached her at home on a weekday, told her he had some pills, and asked if she wanted to "whip up a batch." Holmes described the steps they took and the location of their manufacturing process, indicating they drove into the country in Everett's car. Holmes also testified she and Everett returned to her house after they completed the manufacturing, she split the methamphetamine in half, put each half into a bag, and let Everett choose a bag. They both smoked some of the methamphetamine and Everett shot some in his arm. She claimed Everett said they had "done a good job."

There were some discrepancies between Holmes' trial testimony and her earlier statements to law enforcement officers and testimony at Everett's preliminary hearing. Significantly, she had previously stated the manufacture occurred in either March or April 2006; she had made no mention of May. This testimony led the State to seek an amendment to the complaint to include the month of May as a possible time period during which the crime had been

committed. Even though this motion was not made until after the close of all evidence, including the defense's case-in-chief, the court allowed the amendment.

In his defense, Everett called Rex Moubry, his employer in 2006. Moubry testified that Everett worked for him for approximately 2 years. During March and April 2006, Everett never missed a full day of work, in fact, "he never missed a day in all two years." There was, however, a week during March and April 2006 that Everett did not work a full 40 hour week because Moubry sent Everett home a few hours early one day when Everett was sick. Similar evidence regarding Everett's work history in the month of May was presented by written stipulation after the court allowed the State to amend the complaint.

Everett also called a private investigator to testify that his car was not in drivable condition. The investigator testified that Everett's wife reported the car was damaged in 2005 in a collision with a deer. The investigator also testified the car's registration tag expired on May 31, 2005.

Finally, John Tremblay, the director of the Northwest Kansas Community Corrections and Parole, testified that at the time of the alleged events Everett was part of the community corrections program. As part of the program, Everett was required to take random drug tests for eight or nine different drugs, including methamphetamine. Everett was tested 22 times in March and April 2006 without a positive result for methamphetamine. Tremblay testified that methamphetamine will stay in your system for approximately 72 hours after use. In addition, Everett participated in a methamphetamine treatment program that met on Tuesdays and Thursdays. As part of that program, he was subject to random testing at each treatment session. After the complaint was amended, a written stipulation was presented to the jury that established that Everett did not test positive for methamphetamine during the month of May.

The State started its cross-examination of Tremblay by asking, without objection from the defense: "Now, community corrections is a program for people that have committed some crime, is that correct?" Tremblay answered: "Felony crimes only, sir." The State

then asked, again without objection from the defense: "And so that means that [Everett] was there because he'd committed a crime?" Tremblay responded: "Yes, sir." Then the State asked to approach the bench with defense counsel. In a bench conference outside the hearing of the jury, the trial judge modified a pretrial order in which the judge had prohibited evidence regarding Everett's prior conviction and his previous involvement in manufacturing methamphetamine. In modifying the order, the judge noted that defense counsel had mentioned Everett's probation during voir dire and had asked Tremblay questions about Everett's involvement in a methamphetamine treatment program. Defense counsel objected to the modification of the order and the admission of the evidence because "the information as to what he was actually convicted of has not been brought forward. The actual crime would be very prejudicial against him." The court responded:

"I'm going to conclude that the . . . prejudicial effect of the testimony is outweighed by its probative value. It would seem to me that the jury would justifiably have questions regarding how he may have gotten into this program, and my guess is based upon what the witness has already indicated, they have inferred he's involved with some type of drug treatment program as a result of a felony conviction."

The State then asked Tremblay, before the jury, about Everett's prior conviction, and Tremblay replied that the crime was possession of drug paraphernalia to manufacture methamphetamine.

The jury convicted Everett of one count of manufacture of methamphetamine in violation of K.S.A. 65-4159(a). Everett was sentenced to 162 months' imprisonment.

## Court of Appeals' Decision

Everett appealed his conviction and raised five issues before the Court of Appeals. Everett contended: (1) Evidence of the prior conviction was erroneously admitted; (2) a late amendment to the complaint should not have been allowed; (3) an improper answer was given when the jury asked about the consequences of a hung jury; (4) jurors should have been recalled to determine if there had been juror misconduct; and (5) cumulative error deprived him of a fair trial. A majority of the court affirmed Everett's conviction;

Judge Greene dissented. *State v. Everett*, No. 100,529, 2010 WL 922571 (Kan. App. 2010) (unpublished opinion).

In ruling on whether the trial court improperly admitted evidence of Everett's prior conviction, the majority determined that Everett opened the door to the admission of the evidence by mentioning Everett's prior criminal activity during voir dire and by asking Tremblay about Everett's participation in community corrections and related drug abuse testing and treatment programs. The majority also reasoned that defense counsel should have objected to the State's questions that allowed the jury to learn that Everett had been previously convicted of a felony. *Everett*, 2010 WL 922571, at *7. Finally, the majority determined the trial court did not abuse its discretion because it gave clear consideration to the prejudicial effect of the evidence. Based on these considerations, the majority concluded the trial court did not err in admitting evidence of Everett's prior conviction. *Everett*, 2010 WL 922571, at *8.

Judge Greene, in his dissent, cited *State v. White*, No. 94,716, 2007 WL 1964865 (Kan. App.) (unpublished opinion), *rev. denied* 285 Kan. 1177 (2007), and federal cases for the view that "the consequences of opening the door should be commensurate with the degree it has been opened." *Everett*, 2010 WL 922571, at *24 (Greene, J., dissenting). Judge Greene concluded that Everett's "record of reporting and drug testing did not open the door to the nature of his conviction that led to probation in the first place because there was no nexus between the nature of the conviction and the results of drug testing." *Everett*, 2010 WL 922571, at *24 (Greene, J., dissenting). He also disagreed with the trial judge's conclusion that the probative value of the prior conviction outweighed the prejudicial affect, arguing that this type of propensity evidence tends to have a significant and undue prejudicial impact on the jury. *Everett*, 2010 WL 922571, at *25 (Greene, J., dissenting).

Following the Court of Appeals' decision affirming his convictions, Everett filed a petition for review raising the same five arguments as he argued before the Court of Appeals. This court granted Everett's petition for review and has jurisdiction under

K.S.A. 20-3018(b). Because we find the admission of Everett's prior conviction was reversible error, we do not address the four other issues because they are unlikely to arise on remand.

## ANALYSIS

A multistep analysis applies to issues regarding the admission of evidence and separate standards of appellate review apply to each analytical step. *State v. Shadden*, 290 Kan. 803, 817, 235 P.3d 436 (2010). Initially, a court must determine if the evidence is relevant. Then the court must determine the rules of evidence that may apply to the admission of the evidence and decide if the evidence is admissible under those rules and if its probative value is substantially outweighed by the potential for prejudice. *Shadden*, 290 Kan. at 817-18.

In this appeal, the State attempts to circumvent these analytical steps by arguing evidence of Everett's prior conviction was admissible under the "open the door" rule. The "open the door" rule applies "when a defendant opens an otherwise inadmissible area of evidence during the examination of witnesses." Under the rule, "the prosecution may then present evidence in that formerly forbidden sphere." *State v. Johnson*, 258 Kan. 475, 481, 905 P.2d 94 (1995) (defense counsel "opened the door" to otherwise inadmissible hearsay by waiving constitutional confrontation rights when questioning witnesses about existence of phone calls and a note). In essence, through this rule, the State seeks to admit evidence of a prior crime in a manner that is independent of the rules of evidence, including K.S.A. 60-455, which relates to the admission of evidence regarding other crimes or civil wrongs.

The State's arguments ignore our decision in *Gunby* in which we ended a prior practice of admitting evidence of other crimes or civil wrongs on any grounds independent of K.S.A. 60-455. *Gunby*, 282 Kan. at 48-57. We clearly stated that "[t]he practice of admitting evidence independent of K.S.A. 60-455 also is unnecessary and carries the potential to violate a criminal defendant's fundamental right to a fair trial." *Gunby*, 282 Kan. at 49.

Before the decision in *Gunby*, there were decisions in which this court allowed the admission of prior crime evidence based on the

"open the door" rule. See, *e.g.*, *State v. Chatmon*, 234 Kan. 197, 203, 671 P.2d 531 (1983) (during cross-examination, defendant mentioned prior criminal charges; court stated that "when the testimony of the defendant goes beyond those bounds of the statutory protection and makes reference to specific prior incidents, he forgoes the protection of the statutes"); *State v. Stokes*, 215 Kan. 5, 8, 523 P.2d 364 (1974) (The defendant's mention of prior arrest and elicitation of testimony regarding criminal record "interjected into the case an incident from her past which it then left dangling. The door had been opened by the defense; the prosecution was free to enter and explore."); *State v. Pappan*, 206 Kan. 195, 196, 477 P.2d 989 (1970) (allowing the State to elicit over objection evidence that defendant was on parole for "armed robbery and 'uttering,'" because the defendant chose to reveal that he was on parole during direct examination).

At the time of these decisions, however, evidence of prior crimes was allowed for reasons independent of K.S.A. 60-455. Our decision in *Gunby* refined that analysis and announced that "admissibility of *any and all* other crimes and civil wrongs evidence will be governed by K.S.A. 60-455." (Emphasis added.) *Gunby*, 282 Kan. at 57. Consistent with that decision, we hold that evidence admitted in rebuttal to other evidence under an "open the door" rule is not an exception permitting evidence of other crimes or civil wrongs to be admitted independent of K.S.A. 60-455. As the Tenth Circuit Court of Appeals has stated: "Rebuttal evidence is not *any* evidence an aggrieved litigant may wish to admit in response to a topic introduced by his opponent." (Emphasis added.) *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005).

Accordingly, even after Everett opened the door, the trial court should have conducted an analysis under K.S.A. 60-455 before admitting evidence of the nature of Everett's prior conviction. The version of K.S.A. 60-455 in effect at the time of the alleged crimes and during Everett's trial stated:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit another crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject

to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 60-455.

In *Gunby*, we confirmed a three-part test a trial judge must use in determining whether to admit evidence of a defendant's prior crimes or civil wrongs under K.S.A. 60-455, as well as the appropriate standards of appellate review. In *State v. Torres*, 294 Kan. 135, 273 P.3d 729 (2012), we summarized the test as follows:

"First, the district court must determine whether the fact to be proven is material, meaning that this fact has some real bearing on the decision in the case. The appellate court reviews this determination independently, without any required deference to the district court.

"Second, the district court must determine whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed material fact. In making this determination, the district court considers whether the evidence has any tendency in reason to prove the disputed material fact. The appellate court reviews this determination only for abuse of discretion.

"Third, if the fact to be proven was material and the evidence was relevant to prove a disputed material fact, then the district court must determine whether the probative value of the evidence outweighs the potential for undue prejudice against the defendant. The appellate court also reviews this determination only for abuse of discretion.

"If the evidence meets all of these requirements, it is admitted, but in a jury trial the district court must give the jury a limiting instruction telling the jury the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose)." *Torres*, 294 Kan. at 139-40 (citing *State v. Inkelaar*, 293 Kan. 414, 424, 264 P.3d 81 [2011]).

Under this framework, we first consider whether evidence of the specific nature of Everett's prior conviction for possession of drug paraphernalia to manufacture methamphetamine is material, meaning whether the fact has some bearing on the decision the jury had to make. Here, before trial, the trial judge entered an order in limine prohibiting the State from introducing evidence regarding any other attempts by Everett to manufacture methamphetamine. The State does not question that pretrial ruling. Consequently, we focus on the two facts that were introduced by the defense that caused the judge to revisit that pretrial ruling. Those were that (1) Everett had committed a felony and (2) he was on probation with community corrections.

The State does not dispute the veracity of that evidence, which is another way of saying that it does not seek to impeach Everett's testimony. If it did, the impeachment evidence might be material rebuttal evidence. Rather, the State seeks to open the door wider and add evidence regarding the specific nature of the prior conviction.

The only relevance articulated by the trial judge was the jurors' curiosity. Mere curiosity is not equivalent to materiality. The evidence must be material to the issues the jury must decide or to the rebuttal of the evidence the defense introduced. See *Tanberg*, 401 F.3d at 1166 (to be admissible rebuttal evidence must meet the initial proof); *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) ("[W]hen otherwise inadmissible, rebuttal evidence must be reasonably tailored to the evidence it seeks to refute . . . . [T]here must be a nexus between the purported rebuttal evidence and the evidence . . . [it] seeks to rebut."). In this case, the prior conviction is not an element of the offense, and it does not have a legitimate and effective bearing on the decision of whether Everett unlawfully manufactured a controlled substance. See *State v. Myrick*, 181 Kan. 1056, 1058, 317 P.2d 485 (1957) (A well recognized principle of law is that "evidence of an unrelated prior conviction is irrelevant to prove the offense charged.").

The only potential materiality of the prior conviction is to prove that Everett had the tools to manufacture methamphetamine in the past and probably manufactured methamphetamine this time, *i.e.*, Everett had a propensity to commit the crime. This is precisely the harm K.S.A. 60-455 was designed to prevent, and *Gunby* clarified that evidence is not admissible if its only purpose is to establish a propensity to commit a crime. *Gunby*, 282 Kan. at 50 (recognizing the general rule that prior conviction evidence is inadmissible to prove propensity and is based on the principle that a prior conviction is irrelevant and unduly prejudicial).

The evidence that Everett had been convicted of possession of drug paraphernalia with intent to manufacture methamphetamine was not material, and it was error to admit the evidence even in rebuttal.

Some of the trial judge's comments suggest he had doubts about the admissibility of the evidence, even in rebuttal, but he felt any claim of error had been waived by the defense presenting information regarding the probation. We disagree. General information that a defendant has committed a previous crime is far different from evidence of the exact nature of the prior crime, at least under the specific facts of this case. Granted, the defense's evidence portrayed Everett in a bad light. But the State's rebuttal evidence went further and informed the jury that Everett had planned to manufacture methamphetamine on a prior occasion. This additional evidence was like putting a neon sign over Everett that read, "propensity to manufacture methamphetamine." The difference is significant, distinct, and more prejudicial than simply soiling Everett's character. For the same reasons, Everett's failure to object to the preliminary questions regarding the general nature of community corrections and the fact that Everett was on probation because he had committed an unspecified felony does not preclude our review of this question under K.S.A. 60-404.

Hence, the error was preserved and was not waived by Everett. Because we determine the first step of the three-step *Gunby* analysis was not satisfied, we need not address the remaining steps. Instead, we must next examine whether the error requires us to reverse Everett's conviction. *State v. Wells*, 289 Kan. 1219, 1232-33, 221 P.3d 561 (2009).

*Magnitude of Error*

The conclusion that the evidence of Everett's prior conviction was inadmissible under K.S.A. 60-455 does not automatically lead to reversal. Instead, we must determine whether the admission of that evidence was harmless under K.S.A. 2012 Supp. 60-261. *Wells*, 289 Kan. at 1232-33; *State v. Boggs*, 287 Kan. 298, 318, 197 P.3d 441 (2008). K.S.A. 2012 Supp. 60-261 provides:

"[N]o error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Under this standard, the State—as the party benefitting from the error—carries the burden of demonstrating there is no reasonable probability the error affected the trial's outcome in light of the entire record. *State v. McCullough,* 293 Kan. 970, 983, 270 P.3d 1142 (2012); *State v. Ward,* 292 Kan. 541, 569-70, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

The State made no argument in its brief that the admission of this evidence would have been harmless if we rejected the State's position that it was properly admitted. The failure to make that argument waives it. See *State v. McCaslin,* 291 Kan. 697, 709, 245 P.3d 1030 (2011). Even if the State had briefed the issue, however, we could not find this error harmless. There was no physical evidence against Everett. Rather, the only evidence linking Everett to the crime charged was Holmes' testimony, and there were substantial credibility issues related to her testimony.

The jury was informed that Holmes had been given immunity by the State in exchange for her cooperation that led to charging Everett. Before charges were brought against Everett, Holmes faced criminal charges of her own, including aggravated arson, manufacturing or attempting to manufacture methamphetamine, and two counts of distribution of a controlled substance. As a result of the pending charges, Holmes was facing substantial prison time and had lost custody of her daughter. According to Holmes, while in jail awaiting trial on the pending charges, she gained a new perspective on life and realized that what she had done was wrong. She wrote letters to the sheriff and her lawyer expressing her desire to make a deal so she could get out of jail. Holmes and the Smith County Attorney reached an oral agreement that she would help law enforcement in any way that she could, and she specifically agreed to write statements implicating those with whom she had manufactured methamphetamine in the past 2 years. The State granted Holmes transactional immunity from those crimes.

In May 2007, Holmes provided a handwritten 7-page narrative of an incident of making methamphetamine with Everett in March or April 2006. On June 20, 2007, the State dropped the pending charges against Holmes; the State indicated the charges were dropped because the witness against Holmes failed a lie detector

test. In addition to providing the handwritten statement, Holmes testified at Everett's preliminary hearing and trial. There were discrepancies between Holmes' trial testimony and her previous statements and testimony. Even without these discrepancies, as the jury was instructed, her accomplice testimony should be viewed with caution. See PIK Crim. 3d 52.18 (testimony of an accomplice).

In addition, Everett presented evidence that cast doubt on Holmes' testimony. He established he did not have a working car to drive her into the country where she alleged the manufacture occurred; he worked on weekdays even though that is when she said they manufactured methamphetamine; and he did not test positive for methamphetamine when randomly tested over the 3-month period referred to by Holmes even though she said he used the manufactured product. As a result, Holmes' testimony, which should be viewed with caution, was impeached by contrary evidence.

In light of these various circumstances, we conclude there is a reasonable probability that the prior conviction evidence, which failed to meet the requirements of K.S.A. 60-455, could have affected the jury verdict. Everett was undoubtedly prejudiced by evidence that he had been convicted of possessing paraphernalia used to manufacture methamphetamine. Further, this prejudice was not ameliorated by the limiting instruction that informed the jury the prior conviction could be considered to prove opportunity, intent, plan, knowledge, and absence of mistake or accident. The evidence was not admitted for any of these purposes, and this type of a shotgun approach to a limiting instruction has been deemed to be error. See *State v. Magallanez*, 290 Kan. 906, 919, 235 P.3d 460 (2010). If anything, this instruction created more confusion; it certainly did not prevent prejudice from the admission of the evidence.

Hence, we hold the error of admitting evidence of the nature of Everett's prior conviction was not harmless. Because we reverse Everett's conviction on this grounds, we need not address Everett's remaining claims as they arise from circumstances that are not likely to arise again on remand.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.